(47 App. Div. 126.)

### PEOPLE ex rel. COLONIAL TRUST CO. v. MORGAN.

(Supreme Court, Appellate Division, Third Department.   January 8, 1900.)

CORPORATIONS—FRANCHISE TAX—ASSESSMENT.

Under Laws 1896, c. 908, § 182, providing for payment by every corporation of an annual franchise tax, of one-fourth of a mill for each 1 per cent. of dividends, in case 6 per cent. or more dividends are paid, otherwise of one and one-half mills on each dollar of its capital stock, and section 190 providing that in case of less than 6 per cent. dividends, the corporation shall estimate and appraise its capital stock, "at its actual value in cash, not less, however, than the average price which said stock sold for during the year," and the comptroller if not satisfied therewith may make a valuation thereof, and settle the tax thereon,—the capital stock and share stock are considered as the same thing, and may be assessed for more than the par value of the shares.

Parker, P. J., dissenting.

Certiorari, on the relation of the Colonial Trust Company, to review the determination of William J. Morgan as comptroller.  Determination sustained.

The relator is a domestic corporation.  Its capital stock is $1,000,000, fully paid in, and also a paid-in surplus of $500 contributed by the subscribers to the capital stock of the relator.  No dividends have been paid by the relator. During the year ending October 31, 1897, the highest price at which the relator's stock was sold was $165 per share, of the par value of $100, and the lowest price was $150, making the average price per share $157.50.  During the year ending October 31, 1898, the highest price at which the stock was sold was $250 per share, and the lowest price was $160 per share, the average price per share being $205.  In January, 1898, the comptroller estimated and appraised the capital stock of the relator for the year ending October 31, 1897, to be $1,575,000, and settled an account upon the valuation so made by him against the relator for $2,362.50 for taxes on its capital stock for that year. In November, 1898, the comptroller estimated and appraised the capital stock of the relator at $2,050,000, and settled an account upon the valuation so made by him against the relator for $3,075 for taxes on its capital stock for said year. An application was thereafter made for a revision and readjustment of said accounts.  A rehearing was had, and the application denied, whereupon this proceeding was taken to review the determination of the comptroller.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

Sheehan & Collin (Jas. A. Collin, of counsel), for relator.

John C. Davies, Atty. Gen. (John H. Coyne, Dep. Atty. Gen., of counsel), for respondent.

HERRICK, J.   The tax against the relator is levied by the comptroller pursuant to sections 182 and 190 of chapter 908 of the Laws of 1896, reading as follows:

Section 182: "Every corporation, joint stock company or association incorporated, organized or formed under, by or pursuant to law in this state, shall pay to the state treasurer annually, an annual tax to be computed upon the basis of the amount of its capital stock employed within this state and upon each dollar of such amount, at the rate of one-quarter of a mill for each one per centum of dividends made and declared upon its capital stock during each year ending with the thirty-first day of October, if the dividends amount to six or more than six per centum upon the par value of such capital stock.  If such dividend or dividends amount to less than six per centum on the par value of the capital stock, the tax shall be at the rate of one and one-half mills upon

such portion of the capital stock at par as the amount of capital employed within this state bears to the entire capital of the corporation. If no dividend is made or declared, the tax shall be at the rate of one and one-half mills upon each dollar of' the appraised capital employed within the state. If 'such corporation, joint stock company or association shall have more than one kind of capital stock, and upon one of such kinds of stock a dividend or dividends amounting to six, or more than six per centum, upon the par value thereof, has been made or declared, and upon the other no dividend has been made or declared, or the dividend or dividends made or declared thereon amount to less than six per centum upon the par value thereof, then the tax shall be at the rate of one-quarter of a mill for each one per centum of dividends made or declared upon the capital stock upon the par value of which the dividend or dividends made or declared amount to six or more than six per centum, and in addition thereto a tax shall be charged at the rate of one and one-half mills upon every dollar of the valuation made in accordance with the provisions of this act of the capital stock upon which no dividend was made or declared, or upon the par value of which the dividend or dividends made or declared did not amount to six per centum. Every corporation, joint stock company or association organized, incorporated or formed under the laws of any other state or country, shall pay a like tax for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, to be computed upon the basis of the capital employed by it within this state."

- Section 190: "In case no dividend has been declared, by a corporation, association or joint stock company liable to pay a tax under section one hundred and eighty-two of this chapter, the treasurer or secretary of the company shall, under oath, between the first and fifteenth day of November in each year, estimate and appraise the capital stock of such company upon which no dividend has been declared, or upon which the dividend amounted to less than six per centum at its actual value in cash, not less, however, than the average price which said stock sold for during said year, and shall forward the same to the comptroller with the report provided for in the last section. If the comptroller is not satisfied with the valuation so made and returned he is authorized and empowered to make a valuation thereof, and settle an account upon the valuation so made by him, and the taxes, penalties and interest to be paid by the state."

The complaint is made by the relator that it has been assessed at more than the par value of its capital stock. So far as I am aware, this precise question has never been directly passed upon in any case in this state, and counsel who have argued the case have apparently been unable to find any decision directly upon the question.. The case principally relied upon by the relator is apparently the case of People v. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762. That case, however, was decided upon an entirely different statute from the one now under consideration. The tax there was levied pursuant to the provisions of section 3 of chapter 456 of the Laws of 1857, reading as follows:

"The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent. of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county."

And the court in that case made a distinction between the capital stock and the share stock, excluding from its capital stock the amount of its surplus and the value of its franchise, and held that

the act, by its phraseology, intended that a tax should only be levied upon the capital stock as distinguished from the share stock, and that an assessment upon the actual value of it measured by the market value of its shares was erroneous and illegal. It will be observed that under the present statute it is expressly provided that the actual value of the capital stock, in certain cases shall be determined by the market value of its shares, because it is provided by section 190 that the officers of the company shall "estimate and appraise the capital stock of such company upon which no dividend has been declared, or upon which the dividend amounted to less than six per centum at its actual value in cash; not less, however, than the average price which said stock sold for during such year." Here, evidently, the capital stock and the share stock are considered as one and the same thing, because we know that there are no sales in the market, or no market value for the capital stock of a corporation, as distinguished from the share stock. We have been cited to cases holding that the surplus of a corporation cannot be taxed as part of the capital stock. Without reviewing those cases, it seems to me that they have no application to the case now under consideration.

The statute we are now considering, as has been observed, expressly provides, under certain circumstances, for the valuation of the capital stock at not less than the average price which such stock sold for during the year; that is, a valuation or appraisal at its average market value. Into that market value enters the amount of its earnings, its surplus, and the value of its franchises; so that, in assessing such stock upon its market value, indirectly it is assessed upon its surplus. Sections 182 and 190 of the Laws of 1896, while new in form, are the same, in substance, as chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881. Each provides for a franchise tax, and to determine the value of that franchise resort is had to the dividends declared by the company. The statute of 1880, as amended by the statute of 1881, came in question in the case of People v. Albany Ins. Co., 92 N. Y. 458. The question there under consideration was whether the sum of $100,000, divided among the stockholders, was a dividend within the meaning of the statute; the said sum of $100,000 being the result of the accumulation of the earnings and profits of the company for several years prior to that time, and the company having declared a dividend of 6¼ per cent. from the earnings and profits of the company for the current year. The court, commenting upon the statute, said:

"The tax in question is not upon the dividends declared, nor upon the property of the company, but upon its franchise of carrying on business as a corporation. * * * The framers of the act had to solve the problem of ascertaining the value of such enjoyment, and for that purpose alone was reference made to dividends. The act provides that every corporation (with certain exceptions) shall pay annually into the treasury of the state a tax upon its corporate franchise, to be computed as follows: If the dividend or dividends made or declared by such corporation, etc., during any year ending with the 1st day of November, amount to six or more than six per centum upon the par value of its stock, then the tax to be at the rate of one-quarter mill on the capital stock for each one per centum of dividends so made or declared;

or, if no dividends be made or declared, or if the dividends made or declared do not amount to six per centum upon the par value of the capital stock, then the tax is to be at the rate of one and one-half mills upon each dollar of the valuation of the said capital stock, etc. The amount of dividends made or declared during the year are thus made simply the measure of the annual value of the franchise upon which the tax is to be annually paid. As dividends can be legally made only out of earnings or profits, and cannot be made out of capital, they are assumed to approximate, as nearly as practicable, the just measure of the tax which should be imposed upon the corporation for the enjoyment of its franchise. *Should a corporation earning six per cent. or more withhold all dividends or pay less than six per cent., and accumulate its earnings, or employ them as capital to improve its property, it would not thereby escape taxation; for it would then be taxable according to the actual value of its capital stock, and that value would be increased by the amount of surplus thus accumulated, and it would be taxable at the rate of one and one-half mills upon each dollar of the valuation of such stock, which will be found by computation to be substantially the same amount for which it would have been taxable had the profits been divided.* But should a corporation, for the purpose of evading taxes under the act, divide six per cent. or more, but less than its actual earnings, in any one year after the passage of the acts of 1880 and 1881, and thus create a surplus, there would be no injustice in treating the division of such surplus in a subsequent year as a dividend, within the meaning of the act; for it would be the statutory measure of the value of the franchise which the corporation had enjoyed since the time when such franchise was subjected to the tax."

While perhaps the portion of the foregoing opinion that I have italicized was not necessary to be said in deciding the question then before the court, yet it seems to me a correct exposition of the statute then under consideration, and, the provision of the existing statute upon the same subject being substantially the same, the language there used is applicable to the case before us. The value of a franchise is fairly tested by its earning capacity. Whether those earnings are distributed in dividends, or are accumulated in surplus, makes no difference in the real value. Some test is the amount the incorporators are willing to pay for it. If they are willing to pay into the corporation treasury more than the par value of the stock, and thus create a surplus, it is presumably because they believe the franchise is worth it. So that, whether the surplus is created by accumulated earnings, or by more than the par value being paid into the treasury for the stock, it is because of the worth of the franchise. In the absence of dividends by which to measure the value of the franchise, the statute has provided that it shall be measured by the average price for which the stock is sold. That leads, in some instances, to a valuation below the par value, and in some to a valuation above par. Instead of leaving it to the assessing officer to determine its value, the statute takes the determination of the business public, which, in making its estimate of value, takes into consideration the surplus of a corporation as well as a deficiency. The determination of the comptroller was made in accordance with the statute, and should be confirmed.

Determination of the comptroller confirmed, with $50 costs and disbursements. All concur, except PARKER, P. J., dissenting.